**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**(STATESBORO DIVISION)**

LAURA LANE NEWTON,

Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

Case No.: 6:23-cv-00059-JRH-BKE

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION**

Plaintiff Laura Lane Newton ("Plaintiff") respectfully submits this Response in Opposition to Defendant Experian Information Solutions, Inc.'s ("Experian") Motion to Compel Arbitration [Dkt. No. 17, the "Motion"].

## I. INTRODUCTION

Experian has filed a boilerplate motion – indistinguishable from the motion it currently files in the majority of the myriad consumer cases filed against Experian in federal court – supported only by a conclusory declaration from an operations director employed at Experian's sister-company. On that paltry record, Experian seeks to force Plaintiff to forego this legal action and pursue the same in a private, for-profit arbitration venue. On a purely evidentiary basis, Experian cannot establish the formation of an arbitration contract under applicable state law. Experian has disclosed zero witnesses able to testify to such formation beyond the flawed declaration of Dan Smith ("Smith"). This failure of proof is magnified by Experian's sustained refusal – despite persistent and repeated requests from the undersigned – to produce any documentary evidence supportive of Smith's declaration. In fact, despite said requests from the undersigned, Experian has not only refused to produce any documentary evidence supportive of Smith's declaration but has provided no explanation or justification as to **why** it refuses to provide any such evidence. Even worse, while Smith's declaration explicitly relies upon his purported "review" of documents – sworn by Smith to be maintained in the regular course of business – **nowhere** in the 90 pages of exhibits attached to the declaration does Smith include those documents which allegedly support his sworn statements, and which Experian has repeatedly refused to provide when requested.

For such a serious and substantial demand – the stripping away of a consumer's Congressionally established right to a federal jury trial – the Court should demand commensurate evidentiary support. Because it lacks such support and as Plaintiff denies ever having agreed to arbitrate her claims raised in this case, Experian's Motion should be denied. Further, and in the alternative, the sign-up process described in Smith's declaration is facially insufficient for a showing of mutual assent, a fundamental requirement for a finding of contract formation.

For these reasons, the Court should deny Experian's Motion.

## II. BACKGROUND

This action is before the Court pursuant to the protections provided to consumers by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, *et seq*. Plaintiff is the victim of flagrantly inaccurate consumer reporting at the hands of Experian, which forms the basis of Plaintiff's claims for violations of 15 U.S.C. §§ 1681e(b) and 1681i. [*See generally*, Dkt. No. 1, the "Complaint"]. Experian is a consumer reporting agency ("CRA") governed by the FCRA. 15 U.S.C. §1681a(f); Complaint, at ¶ 16. For years, Experian has struggled to meet the stringent accuracy requirements mandated by the FCRA. *See, e.g., Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV1064 AJT/TRJ, 2011 WL 1085874, at *6–7 (E.D. Va. Mar. 18, 2011) ("Given the purpose for which a reinvestigation was required, a fact finder could conclude that Experian had failed to conduct a reasonable investigation 'to assure maximum possible accuracy' in Burke's credit report."); *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008) ("When conducting a reinvestigation pursuant to 15 U.S.C. § 1681i, a [CRA] must exercise reasonable diligence[.] […] On our own motion, therefore, we grant summary judgment to Dennis on his claim that Experian negligently failed to conduct a reasonable reinvestigation in violation of section 1681i."); *Reyes v. Experian Info. Sols., Inc.*, 773 F. App'x 882, 885 (9th Cir. 2019) ("We reverse the grant of summary judgment in Experian's favor [and] vacate the district court's orders denying Reyes's motions for partial summary judgment and class certification[.]").

Since the Consumer Financial Protection Bureau ("CFPB") began recording consumer complaints in December 2011, Experian has been a lightning rod for consumer dissatisfaction. This is evidenced by more than half a million complaints filed against it, representing approximately **15% of all complaints** across several sectors of consumer finance, and in 2023

averaged more than 20,000 consumer complaints per month.[1] Furthermore, the company has faced nearly 10,000 lawsuits in federal courts since 2011, with a consistent increase each year since 2017. To wit, the number of lawsuits filed against Experian in 2022 was **twice** that of 2017, highlighting a growing trend of legal challenges against the company.

These legal challenges can only occur when a consumer has access to their credit reports. Congress granted every consumer the federal right to access their own credit reports beginning in 2004. *See* 15 U.S.C. §1681j(a); Pub.L. 108-159, 117 Stat. 1952. In addition to these free reports – which a consumer can only obtain once per year – over the last few years, multiple companies have cropped up which now provide consumers with access to free credit monitoring services. However, unlike with the other two major credit bureaus – non-parties Equifax and Trans Union – consumers are unable to access their Experian credit reports through the vast majority of free credit monitoring services (e.g., CreditKarma, Credit Sesame). This is by design, as Experian's intent for years has been to funnel consumers away from free services and toward Experian's paid credit services.

Beginning in 2004, Experian and non-parties Equifax and Trans Union were required to establish a website where consumers could request their free annual credit report, resulting in the creation of www.AnnualCreditReport.com. Experian's parent company soon launched a website with a deceptively similar name, www.FreeCreditReport.com. This website, the original version of CreditWorks, was part of Experian's strategy to mislead, confuse, and redirect consumers away from the official free credit report website, and ultimately to Experian's monetized product. The

[1] https://www.consumerfinance.gov/data-research/consumer-complaints/search/?company=Experian%20Information%20Solutions%20Inc.&date_received_max=2023-12-19&date_received_min=2023-01-01&page=1&searchField=all&size=25&sort=created_date_desc&tab=List

Federal Trade Commission ("FTC") castigated this deceptive marketing, leading to a settlement with Experian Consumer Direct, the Experian entity which operates CreditWorks. *See* https://www.ftc.gov/news-events/news/press-releases/2005/08/marketer-free-credit-reports-settles-ftc-charges-0.

Following the settlement with the FTC, Experian remained committed in its efforts to profit from consumers' attempts to be proactive and monitor their credit reports. To the surprise of nobody, in 2017, the CFPB filed an enforcement action against Experian relating to the same kind of malfeasance, resulting in **another** settlement from Experian to the tune of $3 million. *See* https://files.consumerfinance.gov/f/documents/201703_cfpb_Experian-Holdings-Inc-consent-order.pdf. ("Experian advertised Experian Credit-Related Products on AnnualCreditReport.com before consumers 'obtained' their annual credit disclosures. When consumers sought to order their free file disclosures from Experian, consumers were taken to a webpage that displayed a summary of their credit report and that included Experian's advertisements.").

Continuing Experian's long history of struggles to comport with the requirements and spirit of the FCRA, the last few years have seen Experian shift its efforts toward limiting the way consumers may seek redress for Experian's violations of the FCRA. Namely, Experian has now implemented a broad litigation strategy in which it seeks to compel consumers to arbitration in as many instances as it can. It does so using an arbitration clause, hidden within a hyperlink on one its sister-company's websites. Those unwitting consumers who mistakenly venture to the website to obtain the "free credit report" to which they are already entitled by law are duped into passively agreeing to a hidden waiver of their federal rights.

The last year has seen Experian's attempt to realize the benefits of this scheme – namely the removal of judicial protections originally afforded consumers by Congressional action – by the

mass filing of motions to compel arbitration in the federal suits brought by harmed consumers. Experian's **express** goal in doing so is to limit consumers' access to relevant discovery, to make it more difficult for consumers to prove their claims under the FCRA, and to escape the FCRA's consumer-friendly fee-shifting provisions. *See* Exhibit A (Communication from Experian to an arbitrator in an FCRA action explicitly asking the arbitrator to preclude all written discovery, disallow any depositions, prohibit expert testimony completely, and arbitrarily limit the attorneys' fees mandated by the FCRA).

These motions to compel, much like the Motion at issue, are universally "supported" by nothing more than a copy and pasted, attorney-crafted declaration whereby an employee is chosen seemingly at random to swear to facts the employee cannot possibly know personally, namely that the consumer at issue manifested assent to the arbitration agreement on the day that they signed up for an Experian account. This case is no different.

## III. <u>LEGAL STANDARD</u>

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Axa Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1330, 1334 (S.D. Fla. 2009) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting *Steelworkers v. Warrior Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960))) (citing *Scott v. Prudential Secs., Inc.*, 141 F.3d 1007, 1011 (11th Cir. 1998) (observing that because arbitration is a creature of contract, no party can be compelled to submit to arbitration without having given prior contractual consent to do so) (citing *AT T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986))).

The Supreme Court has held that arbitration agreements are to be on the same footing as

other contracts, with no special rules applicable to them. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). "A party seeking to compel arbitration has the burden to prove the existence of a valid agreement to arbitrate the claims in question." *Walker v. Got'cha Towing & Recovery, LLC (In re Walker)*, 551 B.R. 679, 683 (Bankr. M.D. Ga. 2016) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); *Hanover Ins. Co. v. Atlantis Drywall & Framing LLC*, 611 Fed.Appx. 585, 588 (11th Cir. 2015)).

"In ruling on a motion to compel arbitration, this Court applies a standard similar to review of a motion for summary judgment." *Bailey v. Diversified Consultants, Inc.*, 444 F. Supp. 3d 1330, 1333 (N.D. Ala. 2020) (citing *In re Checking Account Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate") (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008))). "[A] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement **only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement**." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (citing Fed.R.Civ.P. 56(a)) (emphasis added).

"In order '[t]o satisfy itself that [an arbitration] agreement exists,' courts must undertake to resolve any issues relating to the formation of the arbitration agreement." *Davis v. GGNSC Admin. Servs. LLC*, 290 F. Supp. 3d 1332, 1335 (M.D. Ga. 2017) (citing *Granite Rock Company v. International Brotherhood of Teamsters*, 561 U.S. 287, 297, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010); *Larsen v. Citibank FSB*, 871 F.3d 1295, 1302–03 (11th Cir. 2017)). "[T]he threshold issue

is whether, as a matter of contract formation, there was consent by the parties to enter into the agreement." *Davis*, 290 F. Supp. 3d at 1335 (citing *Hogsett v. Parkwood Nursing & Rehabilitation Center, Inc.*, 997 F.Supp.2d 1318, 1323 (2014) ("an arbitration agreement is still a contract and, as such, it requires consent by the parties to the agreement")). "The Supreme Court has made clear that this inquiry is a matter of state contract law." *Davis*, 290 F. Supp. 3d at 1335 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)).

At Georgia common law, "[a] valid contract requires mutual assent, and if such assent is lacking, the contract is not enforceable." *Sidhom v. Boutros*, 855 S.E.2d 426, 428 (Ga. Ct. App. 2021) (citing OCGA § 13-3-1) (further citations omitted). "[T]he party asserting the existence of a contract has the burden of proving its existence and its terms." *Sherman v. Dickey,* 322 Ga. App. 228, 232, 744 S.E.2d 408 (2013).

## IV. ARGUMENT

On the evidentiary record before the Court, Experian cannot bear its burden of proving the formation and existence of a binding arbitration agreement. The only "evidence" that is presented by Experian to fulfill its burden is inadmissible and fails to counter the Plaintiff's allegations that she never saw – much less assented to – any agreement to strip her rights to a federal jury trial here and would not have assented to the same had she seen such. *See* Exhibit B, Declaration of Laura Lane Newton ("Plaintiff's Decl."), at ¶ 2-6. Absent Experian producing documentary evidence substantiating its claims – which it has thus far adamantly refused to do despite direct and explicit requests from the undersigned – the present dispute ends there.

However, there is more. Even accepting, at face value, the inadmissible statements in Smith's declaration, the clickwrap agreement purportedly utilized by Experian to lure Plaintiff into waiving his right to a federal jury trial is insufficient to support a finding of assent on the part of

Plaintiff. Thus, regardless of whether the Court considers Smith's foundationless and speculative testimony, Experian's Motion should be denied.

## A. SMITH'S DECLARATION FAILS TO MEET MINIMUM EVIDENTIARY STANDARDS FOR ADMISSIBILITY AND CANNOT BE USED TO SUPPORT EXPERIAN'S MOTION

### 1. Experian's Motion Should Be Denied With Prejudice Due To Experian's Refusal To Provide Relevant Documents To Plaintiff And Failure To Attach Documents Necessary For Determination Of The Issues in Its Motion

The FAA provides that a court may compel arbitration only "upon being satisfied that the making of the agreement or the failure to comply therewith is not at issue." 9 U.S.C. § 4. Any evidentiary burden on the party opposing arbitration "only arises, however, after the proponent produces **credible, admissible evidence which satisfies the Court that there was an arbitration agreement**." *Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp. 3d 258, 264 (M.D.N.C. 2016) (citing 9 U.S.C. §4) (emphasis added). The **sole** piece of evidence proffered by Experian to satisfy its burden of proving formation of an agreement to arbitrate is that of a declaration signed by Smith [Dkt. No. 17-1] ("Smith Decl."), an employee of "Experian Consumer Services" ("ECS"), a sister-company to Experian. *See* Smith Decl., at ¶1.

Rule 43 allows courts to consider affidavits when deciding motions that rely on facts not present within the record. Fed. R. Civ. P. 43(c). However, the admissibility of an affidavit demands adherence to stringent criteria. An affidavit must present specific facts based on personal knowledge: "Obviously, an affidavit which merely states that the affiant was 'apprised of certain information' should be given little, if any, weight." *Oce' v. Coleman*, 487 F. Supp. 548, 550 n.1. (N.D. Ill. 1980) (citing *Transo Envelope Co. v. Murray Envelope Co.*, 227 F. Supp. 240, 242 (D.N.J. 1964)). An affidavit further may not rely on any facts which are not within the personal knowledge of the affiant. *See Jackson v. Foodland Super Mkt., Ltd.*, 958 F. Supp. 2d 1133, 1140 (D. Haw. 2013) ("A district court will not consider an affidavit that is not based on personal

knowledge.”).

Indeed, it is not enough that an affiant asserts that he or she has personal knowledge of the facts recited. The affidavit itself must “show affirmatively how the affiant obtained personal knowledge of those facts.” *Williams v. SDI of Jackson, LLC*, No. 15-203-CG-N, 2016 U.S. Dist. LEXIS 139762, at *13 (S.D. Ala. Oct. 7, 2016) (citing *Ward v. First Federal Savings Bank*, 173 F.3d 611, 617-18 (7th Cir. 1999)).

“Furthermore, if the credibility of the affiant is at issue, the court may disregard the affidavit unless the affiant has been produced to give oral testimony and submit to cross-examination.” *Iannella v. Sullivan*, CIV. A. 93-CV-0620, 1995 WL 273608 (E.D. Pa. May 5, 1995) (citing *United Commercial Ins. v. Paymaster Corp.*, 962 F.2d 853, 858 (9th Cir. 1992).

Rule 43 does not explicitly detail the requirements for an affidavit or declaration to be considered in connection with a motion. However, within the Eleventh Circuit, motions to compel arbitration are analyzed under the summary judgment standard. *Bazemore*, 827 F.3d at 1333. Consequently, Rule 56’s treatment of declarations applies neatly. Rule 56(c)(4) requires that “[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.” Fed. R. Civ. P. 56(c)(4). Federal Rule of Evidence 602 provides additional reinforcement for this requirement (“a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge in the matter”), and Federal Rule of Evidence 1101 asserts that the Federal Rules of Evidence apply to all proceedings in federal court. Thus, Rule 43 affidavits like Smith’s must be based on personal knowledge, detail facts admissible in evidence, and establish the affiant’s competency. *See* Fed. R. Civ. P. 56(c)(4).

Smith is purportedly the "Director of Product Operations for […] Experian Consumer Services…" *See* Smith Decl. ¶ 1. Smith's position does not and cannot validate what appeared on Plaintiff's unknown electronic device on November 19, 2017, when Plaintiff allegedly signed up for a CreditWorks account. Smith claims, "the facts stated in [his] Declaration are of [his] own personal knowledge," but concedes that all of his "personal knowledge" comes from his review of unidentified "pertinent documents" and "Experian's internal records." *Id.*, at ¶ 1. Smith's declaration is deliberately vague, avoiding any specificity as to identification of any documents. Based on his review of these unknown and unnamed documents, Smith declares that: 1) Plaintiff enrolled in CreditWorks; 2) Plaintiff completed two "webforms" which collected Plaintiff's personal information; and 3) Plaintiff accepted and agreed to Experian's Terms of Use Agreement by clicking a button labelled "Submit Secure Order" at the bottom of the second "webform." *Id.*, at ¶ 3.

The deficiencies in Smith's declaration are glaring. He does not provide, or even so much as reference, any documents which substantiate his assertions about Plaintiff's interactions on any website, the nature of the allegedly accessed webforms, or the contents of any hyperlinks allegedly clicked by Plaintiff on November 19, 2017. *Id.*, at ¶¶ 3-4. His assertions about his "personal knowledge" and what Plaintiff "would have had to" do over six years ago are utterly speculative statements and wholly unsupported by any tangible evidence. Smith neither cites to nor includes as evidence for his statements **any** internal records establishing the ip address of the device allegedly used on November 19, 2017, demonstrating an audit or activity log for that ip address, or any other record which in any way could prove to a reasonable jury that Plaintiff did, in fact, view and agree to the agreement Experian seeks to enforce here.

If Smith stood before this Court and attempted to provide the testimony from his

declaration at trial, truly little of his statements would be admissible under Federal Rule of Evidence 602, as they do not constitute evidence "sufficient to support a finding that [Smith] has personal knowledge" concerning what **Plaintiff** accessed, saw, or clicked on November 19, 2017. *See* Fed. R. Evid. 602. Smith never establishes that he has ever viewed any consumer visiting the unknown website at any point, much less over six years ago on November 19, 2017. Smith never states that he witnessed the operation of the unknown website at any time, or even reviewed a specific document setting forth the operation of this website.

Smith's assertion of "personal knowledge," as he outlines within his declaration, is based on the ambiguous claim that such knowledge was acquired by Smith "in the course and scope of [his] job responsibilities and through the review of […] documents." Smith Decl., at ¶ 1. His declaration characterizes his responsibilities as "supporting the consumer enrollment process into CreditWorks and related services." *Id.* Such responsibilities apparently require that Smith be "familiar" with "Experian's databases that store enrollment information, such as the webpages a consumer would have encountered to complete their enrollment into CreditWorks, the personally identifiable information entered when enrolling, which links or buttons the consumer clicked on, and date and time of the consumer's acceptance of the Terms of Use." *Id.*

It is unclear and unestablished how Smith obtained or even could obtain **personal** knowledge of what webpages a consumer would have encountered absent from being present with the consumer at that moment – a claim not asserted by Smith. Instead, all of Smith's statements concerning his "familiarity" with the Experian websites boil down to Smith's speculations about what Plaintiff must have done. While any person visiting a particular website may claim some degree of familiarity with the website, this general awareness does not constitute a reliable foundation for asserting detailed knowledge about a particular consumer's interactions with that

website on a particular date. Smith's description and position do not inherently bestow upon him the capacity to know or recall the precise content, appearance, and functionality of a website as it would have allegedly appeared on a personal device belonging to Plaintiff six years ago, nor Plaintiff's alleged engagement with such a website.

The crux of this issue lies in the fundamental legal principle that a witness's professed knowledge **must** be derived from direct experience or observation. Smith's declaration violates the fundamental legal requirement that "an affiant must testify about what he observed himself and **not speculate about what he thinks happened**." *AmTRAN Tech. Co. v. Funai Elec. Co.*, No. 08-cv-740-bbc, 2009 U.S. Dist. LEXIS 35330, at *8 (W.D. Wis. Apr. 27, 2009) (emphasis added).

Stated bluntly, Smith could not **possibly** possess "personal knowledge" sufficient to make the statements contained in his declaration. Smith does not know Plaintiff. Smith has never met Plaintiff. Smith was not present when Plaintiff allegedly agreed to the terms and conditions with which Experian seeks to bind Plaintiff. Smith is nothing more than a glorified custodian of records which Experian has thus far refused to produce. Thus, Smith has no personal knowledge of whether Plaintiff ever agreed to the arbitration agreement at issue and his conclusory statements of the same clearly lack foundation.

Experian's tactic of choosing an employee at random to swear to facts outside their personal knowledge in support of a motion to compel arbitration is not new, and consistent with its generalized disregard for rules. Indeed, Smith's declaration is practically identical to countless other declarations filed in support of practically identical motions throughout the country. Recently, and in the first judicial opinion to contain a substantive, reasoned analysis on this issue, a federal judge called Experian out on this very practice.

> Experian's [motion to compel arbitration] must be denied because it lacks sufficient evidence to provide that [the plaintiff] agreed to the arbitration agreement on which

> Experian relies. Experian's position is quite strange on the simple issue to be resolved. Austin says, under oath, that he did not agree to arbitrate. To prove otherwise, Experian relies on an explanation purporting to show how it was that a person (such as [the plaintiff]) trying to acquire the free credit report (promised on the website of Experian's related company) can use a website and, in so doing, can unknowingly agree to forego his right to proceed in court against Experian by agreeing to arbitrate with a third party that was not even identified as Experian. Experian chose to undertake that burden by relying on [an affidavit]. Having done so, Experian knew that the [affidavit] had to be based on personal knowledge. Fed. R. Civ. P. 56(a); 56(c)(4). **But that requirement was not met.**

*Austin v. Equifax Info. Servs., LLC*, Civil Action No. 3:22cv707, 2023 U.S. Dist. LEXIS 223258, at *20 (E.D. Va. Dec. 13, 2023) (emphasis added).[2] In *Austin*, the court excluded the declaration of a different Experian employee, David Williams ("Williams"), which declaration was substantively **identical** to the declaration now provided by Smith. *See generally*, Exhibit D ("Williams Decl.").[3] The *Austin* court did so in relevant part because "Williams **failed to identify the documents on which he based his asserted personal knowledge.** He did not identify them in the Williams Affidavit itself, **nor did the defense provide them** or even identify their existence **when requested** to in discovery." Ex. B, at 11 (emphasis added).[4] The same facts exist here, where the undersigned has repeatedly requested that Experian provide the documents explicitly relied upon by Smith in obtaining his "personal knowledge" of what allegedly occurred on an unidentified website four years ago. *See* Exhibit E, Declaration of Jenna Dakroub ("Dakroub

---

[2] A copy of the *Austin* Memorandum Opinion is attached hereto as Exhibit C for ease of review by the Court.

[3] In fact, multiple paragraphs from the declarations provided by Smith and Williams contain **identical** text with no changes whatsoever.

[4] The Court continued: "In fact, when probed further on this issue, the defense's interrogatory responses cut against Williams' personal knowledge of the arbitration process, in general and as applied to [the plaintiff]." Interestingly, Smith was the employee who verified Experian's interrogatory answers in *Austin*. Smith was apparently promoted to the position of professional declarant after Senior Judge Payne so thoroughly excoriated the last such employee's declaration. Unfortunately, however, Experian has neglected to correct the underlying issue – the explicit reliance upon undisclosed documents – before Smith affixed his signature to the declaration.

Decl."). This search for documentary evidence supportive of Experian's position has thus far been fruitless and deliberately thwarted by Experian and its conduct.

Tellingly, when Experian was **twice** given the chance in *Austin* to supplement its production with **any** of the documents relied upon by the declarant, it refused to do so, instead filing an identical motion and asking the judge to deny the same so that the exclusion of the declaration from Williams could be immediately appealed. *See* Ex. B, at 14. Understandably, Senior Judge Payne found "Experian's position […] quite strange on the simple issue to be resolved." *Id.*, at 19. Indeed, it is nothing short of baffling that Experian withholds these mysterious documents upon which it apparently relies, and simply refuses to produce them to anybody.

As here, in *Austin*, the parties disagreed on the formation of an arbitration contract. As here, Experian had the burden of proving such formation and made a litigation decision to rely solely upon an inadmissible declaration that explicitly incorporated documents which were "not identified so that the Court could test the merits of the asserted personal knowledge claimed to be based on them." *Id.* When the *Austin* court found that such evidence was insufficient and that "Experian did not meet [its] burden initially" Experian "turned down two invitations to do so after being told that it had failed on the first go round[.]" *Id.*, at 21. Commenting on Experian's bizarre conduct, the court noted, "Experian has a history of difficulty in complying with the FCRA [and] it is passing strange that Experian would forego two opportunities to demonstrate that its system is transparent, rather than, as [the plaintiff] claims, very deceptive." *Id*., at 21 n.5.

Why then, when Experian is **repeatedly** asked to produce evidence that it claims not only exists but is also within the possession of Experian, does Experian **repeatedly** refuse to produce such documentation or even provide a justification for its refusal? Occam's razor would answer with the simplest conclusion: such documents do not exist. Instead, Experian has been seeking to

compel arbitration *en masse* in federal consumer cases with a copy and pasted declaration void of any actual, evidentiary proof that those consumers manifested any assent to waive their federal rights.[5]

This conclusion is supported by the contents of the Smith Decl., where Smith asserts that a review of the relevant documents allows him to state under oath that "[a]fter enrolling, Plaintiff continuously used the [CreditWorks] service, including after the Terms of Use in effect at the time she filed this lawsuit came into effect." Smith Decl., ¶ 5. This level of detail suggests that Experian has documents that evidence precisely what the undersigned has sought from Experian. In fact, the undersigned is aware that in other cases involving Experian, Experian has submitted declarations (also signed by Smith) which enumerate Experian's ability to determine the exact number of times that a purported CreditWorks user actually opened a particular email. *See* Exhibit F, ¶ 2. If Experian's recordkeeping is so incredibly thorough that it tracked and recorded every login over the six years that Plaintiff allegedly maintained and "continuously used" an Experian account, down the date of the last such login, and can be used to determine how many times a particular

[5] In other cases where Experian has filed the same copy/pasted motion, Experian generally responds to the consumer's arguments concerning document production with the following reply: "As was 'repeatedly' explained to Plaintiff's counsel in this case and others, Experian does not have a 'signed' contract to provide them because the agreement was entered into online, with the plaintiff's acceptance signified by a click on the enrollment page." This is an absurd argument. At no point has Plaintiff's counsel stated that the only acceptable evidentiary documents are documents containing a "wet," or ink, signature. However, while Experian may not have a document containing Plaintiff's "wet" signature, Experian undeniably has documents which evidence the information it contends exists. Courts across the judiciary have recognized that electronic contracts may not contain a "wet" signature, but contain other information, like IP addresses, date and time stamps, and metadata which demonstrates the existence of the "click on the enrollment page" that Experian contends occurred. The declaration provided by Experian clearly states the exact date on which Plaintiff allegedly signed the contract in question. Experian could readily produce a printout, or even a screen capture, of whatever business records it reviewed in order to identify this date. Experian has deliberately refrained from doing so and attempts to explain away its choice to refrain from doing so by mischaracterizing the documents being sought by Plaintiff.

email is opened by a consumer, how is it **possible** that Experian does not have contemporaneous records showing what Plaintiff actually did on November 19, 2017?[6]

Regardless, the statements in the declaration from Smith are inadmissible for want of Smith's personal knowledge, and therefore cannot support Experian's assertion of valid formation of an agreement to arbitrate. Smith's declaration amounts to nothing more than a statement from Experian to this Court that: "trust us, our business records establish an agreement to arbitrate even though we cannot or will not find and show you those records." This is insufficient evidence upon which to find that Experian has carried its burden of proving contract formation so convincingly that "there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Bazemore*, 827 F.3d at 1333 (internal quotation marks omitted). In federal court, declarations must be made on personal knowledge, regardless of the stage of litigation in which they are presented and evaluated. Those that are not based upon personal knowledge – like the declaration from Smith – are inadmissible and should be excluded from consideration by the Court. Consequently, because the Smith Decl. is the sole piece of "evidence" presented in support of Experian's burden to show contract formation, Experian's Motion must fail. The Court should therefore deny Experian's Motion with Prejudice.

[6] As an aside, this is not the first time that Experian, in concert with its national counsel at Jones Day, has played games with non-disclosure tactics in federal court. Indeed, it was not that long ago that Experian was soundly admonished for implementing a discovery tactic of refusing to produce documents on the grounds of relevance until the judge overruled the same, and then refusing to produce the same documents on the basis of privilege, arguing – in too-cute fashion – that Experian and its counsel were exempt from producing a privilege log in the first place because their objection was raised "in the alternative" and only because the original relevance objection had been overturned. The Magistrate Judge correctly noted that such tactics "can […] only be described as the result of bad faith, ineptitude, or misguided cleverness." *See* Exhibit G, pg. 5.

**2. In The Alternative, Experian's Motion Should Be Denied Without Prejudice And The Parties Directed To Conduct Discovery Into Documents Necessary To Determine The Issue Of Contract Formation**

While Plaintiff continues to assert that Experian's blanket refusal thus far to produce any documentary evidence supportive of its assertions regarding contract formation warrants denial with prejudice, Plaintiff requests in the alternative that the Court deny Experian's Motion without prejudice and direct the parties to conduct discovery. *See Young v. Experian Info. Sols., Inc.*, Civil Action No. 23-3312 (MAS)(RLS), 2023 U.S. Dist. LEXIS 191018, at *7 (D.N.J. Oct. 23, 2023) ("Experian argues that the Court should decide the Motion without first affording Plaintiff the opportunity for discovery.") (Denying without prejudice a nearly identical motion filed by Experian wherein Experian alleged that arbitration was mandated by the plaintiff's alleged enrollment in a CreditWorks account) (citing *Kisciras v. Experian Info. Solutions, Inc.*, No. 23-776, 2023 U.S. Dist. LEXIS 134888, 2023 WL 4947374, at *1 (D.N.J. Aug. 3, 2023)). "Given that the question of arbitrability cannot be resolved without considering evidence extraneous to the pleadings," the Court should Experian's invitation to resolve the question before Plaintiff has been given the opportunity to conduct discovery. *Young*, 2023 U.S. Dist. LEXIS 191018, at *8.

**B. SMITH'S FOUNDATIONLESS STATEMENTS FAIL TO DEMONSTRATE THAT PLAINTIFF ASSENTED TO THE "CLICKWRAP" ARBITRATION AGREEMENT AT ISSUE**

Contracts formed on the internet come primarily in two flavors: 1) "clickwrap" agreements, in which website users are required to click on an "I agree" box after being presented with a list of terms and conditions of use; and/or, 2) "browse-wrap" agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014); *See also Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1302 (M.D. Fla. 2018). Here, Experian seeks to enforce an agreement that blends these flavors, with a "browse-wrap" hyperlink that leads to a

lengthy "Terms of Use" documents containing, in relevant part, an arbitration agreement embedded in the purported terms above a "clickwrap" "I agree" button.

As one district court noted, "[c]lick-wrap contracts like the one at issue here pose special risks of fraud and error," particularly because "[w]hen one of the contracting parties has exclusive control of the electronic record, which is the case in many consumer online transactions, that party is in a position to produce a document that meets its current preferences and needs." *Dillon*, 173 F. Supp. 3d at 264-66. *Dillon* further recognized that, apart from fraud, "there is a risk of error in the production of a document from the bowels of an electronic record-keeping system, which may include agreements whose terms and electronic clickthrough procedures varied over time." *Id.* All the concerns identified by *Dillon* exist here, and *Dillon* also noted that the risk of error "is even higher when the party maintaining the records and the party producing the records are not the same." *Id.* Experian produces the records here in support of its Motion from a third-party – ECS – and offers a witness from ECS, not Experian.

Even if the Court were to accept wholesale Smith's unsupported and speculative testimony as to what Plaintiff "would have" seen and done several years ago, the clickwrap agreement described therein is insufficient to establish mutual assent from users under the laws of Georgia. In Georgia, as in every state, mutual assent is an elementary requirement for a binding contract. *See Hill-Shafer P'ship*, 799 P.2d at 814. In order for mutual assent to be found for an online agreement, the website "must give at least reasonable, constructive, or inquiry notice of the website's terms to the user, and the user must exhibit 'unambiguous assent' to the terms." *Temple v. Best Rate Holdings LLC*, 360 F. Supp. 3d 1289, 1302 (M.D. Fla. 2018) (citations omitted). "Determining whether a user had reasonable notice requires a fact-based analysis." *Temple*, 360 F. Supp. 3d at 1302 (citing *Berkson v. Gogo LLC*, 97 F.Supp.3d 359, 396-98 (E.D.N.Y. 2015)

(citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014))). "The 'conspicuousness and placement' of hyperlinks to terms, notices of the terms, 'and the website's general design all contribute to whether' an individual would have reasonable notice of a browsewrap agreement." *Temple*, 360 F. Supp. 3d at 1303 (citing *Nguyen*, 763 F.3d at 1177).

As the *Austin* court recently found, the webform utilized by ECS in obtaining arbitration agreements from unsuspecting consumers fails to provide such "reasonable notice." Relying on the reasoning in *Sgouros v. TransUnion Corp.* (817 F.3d 1029 (7th Cir. 2016)) – a Seventh Circuit opinion concerning a similar website maintained by Experian's competitor, Trans Union, LLC ("Trans Union") – Judge Payne found that Experian's website not only failed to provide notice sufficient for a finding of assent on the part of the consumer, but that it was also **deliberately misleading**. *See* Ex. B, at 22 (The declaration from Smith "establishes that the process that [Experian] use[s] **lure[s] consumers** to a sister company's website for the purpose of allegedly receiving a free credit report.") (emphasis added).

In *Sgouros*, the Seventh Circuit held that a clickwrap agreement – including its arbitration agreement – could not be enforced, and largely came to that conclusion because, like Experian, Trans Union advertised the promise of a free credit report to lure consumers into binding arbitration terms. *See generally*, *Sgouros* 817 F.3d 1029. The Seventh Circuit agreed with the district court's analysis that it was not reasonable to believe an average user would understand that by clicking, the consumer was agreeing to a service agreement which was both obscured and mislabeled, and that the consumer therefore could not be found to have mutually assented to the Trans Union contract. *Id*., at 1036.

In *Sgouros* – like here – nothing **required** the consumer to first click on the box containing the arbitration agreement, nor to scroll down to view the complete contents of the same, nor did

the sign-up process call the consumer's attention to any arbitration agreement. *Id*. Further, the Seventh Circuit held that Trans Union's language following the link to the terms actually distracted the consumer by listing what appeared to be a summary of the terms or agreement about the website. *Id*. The text, according to the Seventh Circuit, "said nothing about contractual terms." *Id*., at 1035. No reasonable person would think that hidden within that disclosure was also the message that the same click constituted acceptance of the service agreement. *Id*.

As noted by Senior Judge Payne, the process found lacking by the Seventh Circuit was "essentially the same as to the process relied on by Experian." Ex. B, at 23. Here, Plaintiff's alleged assent to the arbitration agreement was secured, according to Smith, by Plaintiff clicking on a button which stated "Submit Secure Order." *See* Smith Decl., Exhibit 2 (screenshot of the CreditWorks sign-up page as Smith asserts, with no personal knowledge, it would have appeared to Plaintiff in 2017). Above this button is a paragraph of "fine print" wherein ECS's webpage notes that "[b]y clicking [the button]: I accept and agree to your Terms of Use Agreement […]." *Id.* However, as was the case in *Sgouros*, this limited mention of the terms of use hyperlink is followed by **actual** "terms" that any reasonable reader would assume summarized the referenced agreement. *Id.* Specifically, the paragraph indicates that submitting the order will "authorize Consumerinfo.com, Inc. […] to obtain [the consumer's] credit report and/or credit score(s), on a recurring basis […]." *Id.* Moreover, the ECS webpage contains a section titled "Your Order Summary" which similarly refers solely to items relating to credit monitoring. *Id*.

As Judge Payne noted in *Austin*, this language is functionally indistinguishable from the text that the Seventh Circuit found harmful and confusing in *Sgouros*, and as the Seventh Circuit explained, "that text distracted the purchaser from the service agreement by informing him that clicking served a particular purpose unrelated to the agreement." *Sgouros*, 817 F.3d at 1036. Here,

the majority of the "fine print" above the "Create Your Account" button which Plaintiff allegedly clicked explains that submitting the order will authorize ECS to obtain and utilize Plaintiff's personal information, all for purposes of credit monitoring. *See* Smith Decl., pg. 9. So too does the table describing what products the consumer is supposedly "[o]rder[ing]" by "Submit[ting] [her] Secure Order." *Id.* A consumer would view the totality of this information and reasonably conclude that the "fine print" was a **summary** of the "Terms of Use Agreement" briefly noted in that section. *Id.*; *see also Sgouros*, 817 at 1036 (finding that language following a hyperlink to the terms distracted the consumer by listing what appeared to be a summary of the terms or agreement about the website.).

Thus, even if the Court were to accept Smith's speculative statements about what happened several years ago at a place where Smith was not present, with no documentary evidence – which Experian promises exists – produced supportive of these statements, the clickwrap agreement allegedly obtained by ECS from Plaintiff is insufficient to support a finding that Plaintiff was on "reasonable, constructive, or inquiry notice of the website's terms…" *Temple*, 360 F. Supp. 3d at 1302. Without such notice, there cannot be a finding of mutual assent to the terms of the arbitration agreement Experian seeks to enforce here. Accordingly, Experian fails to meet its burden to establish that an enforceable arbitration agreement exists, and its Motion must be denied.

## V. CONCLUSION

For reasons detailed herein, Plaintiff respectfully requests the Court deny Experian's Motion with prejudice. In the alternative, Plaintiff requests that the Court deny Experian's Motion without prejudice and direct the parties to conduct discovery.

Dated: February 2, 2024

*/s/Jenna Dakroub*
Jenna Dakroub, GA #385021
**CONSUMER ATTORNEYS**
260 Peachtree Street NW, Suite 2200
Atlanta, GA 30303
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com

**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, AZ 85258

*Attorneys for Plaintiff,*
*Laura Lane Newton*

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of such filing to all attorneys of record in this matter. Since none of the attorneys of record are non-ECF participants, hard copies of the foregoing have not been provided via personal delivery or by postal mail.

**CONSUMER ATTORNEYS**

*/s/ Jenna Dakroub*